UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUAN PENA,

                  Petitioner,

        - v. -                                09 Civ. 8834 (RJH)

J.F. BELLNIER,                        **<u>MEMORANDUM</u>**
                                   **<u>OPINION AND ORDER</u>**

                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Richard J. Holwell, District Judge:

        Petitioner Juan C. Pena brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Following a jury trial, Pena was convicted of four counts of rape in the first degree in violation of New York Penal Law § 130.35(1) and one count of sexual abuse in the first degree in violation of New York Penal Law § 130.65(1), and was sentenced to an indeterminate term of twenty-five to fifty years imprisonment.  On December 30, 2010, Magistrate Judge Ronald L. Ellis issued a Report and Recommendation (the "Report") in which he recommended that the petition should be denied.  Having reviewed the Report, the record, and Pena's objections, the Court agrees.

## BACKGROUND

        The basic facts of this case are set forth in Magistrate Judge Ellis's Report, familiarity with which is assumed.  The court restates the facts only as they relate to the habeas petition and petitioner's objections to the Report.

        Pena was arrested on May 20, 1993 and arraigned the next day.   An indictment was filed in New York Supreme Court on June 30, 1993 and Pena was arraigned on six

counts of rape in the first degree, one count of sexual abuse in the first degree, and one count of sodomy in the first degree.

There followed a series of adjournments, some of whose details are in dispute. The Court is aware of these adjournments only based on an affidavit filed by the prosecutor in state court pre-trial proceedings.  (*See* Aff. of A. Borgstedt, Mar. 8, 1995 ("Borstedt Aff.").)  That affidavit avers that the prosecutor was, in many cases, not in possession of documentary evidence to support its version of the facts.  The Court has no such evidence either.  Nevertheless, the following facts regarding the adjournments do not appear to be in dispute except where otherwise indicated.

In proceedings on July 1, July 9, July 27, August 24, and September 21, 1993, the prosecution stated ready and the case was adjourned at Pena's request to prepare motions. (*See id.* ¶¶ 7-11.)  On October 19, 1993, Pena filed a discovery motion.  (*See id.* ¶ 12.) After finding that the prosecution had not turned over the materials requested, the then-presiding court found that the prosecution was not ready.  However, the trial court hearing Pena's speedy trial motion did not charge such time to the prosecution and Pena does not challenge that finding here.

On November 3, 1993, the prosecution filed a written Statement of Readiness which indicated that it had provided Pena's trial counsel with all discovery.   (*See id.* ¶ 13.)  Pena filed various motions on November 9, 1993.  On November 16, 1993, the prosecution requested additional time respond to the motions.  (*See id.* ¶ 14.)  The trial court charged this time to the prosecution.  On December 7, 1993 and January 11, 1994, the case was adjourned for unspecified reasons.  (*See id.* ¶ 15.)

2

The parties do appear to dispute both the reasons for and import of numerous adjournments in the following months of 1994.  The prosecution's affidavit before the trial court avers that the prosecution was performing DNA testing between February and June 1994; that the parties consented to adjournments for that reason on February 1, March 1, April 5, May 3, May 17 and June 14, 1994; and that Pena's trial counsel conceded as much on August 16, 1994.  (*See id.* ¶¶ 17-18.)  However, the prosecution admitted that it did not have the minutes of proceedings on any of those dates and no such minutes are before the Court.

The case was further adjourned on August 16 and September 13, 1994.  (*See id.* ¶¶ 18-19.)  The prosecution's affidavit avers that these adjournments were made at Pena's request or to accommodate his counsel's trial schedule.  (*See id.*)  Again, however, the prosecution admitted that it did not have the minutes of proceedings on any of those dates and no such minutes are before the Court.  The affidavit details a series of further adjournments, but those do not appear to be in dispute and are not relevant here.

Pena's trial on (a) four counts of rape and sexual abuse based on an acting-in-concert theory as well as (b) two counts of rape and one of sodomy based on individual liability began on February 26, 1996.

The victim testified as follows. Early in the morning of May 2, 1993, she met a group of men at White Castle restaurant on Fordham Road in the Bronx.   The men asked her to accompany them to a nightclub in Manhattan and she agreed.  Soon after entering the men's car, the victim changed her mind and asked to be let out of the vehicle.  The men refused and instead took her to an apartment where they were met by Pena.

In the apartment, the men began smoking marijuana and snorting cocaine.  They asked the victim to join them, and when she refused, Pena forced her head downward to snort some cocaine.  The men then began removing the victim's clothes despite her protests.  Two men held the victim down and gagged her to prevent her from screaming while a third man raped her.  Soon thereafter, each of the men who had been holding the victim down raped her as well.  Pena stood by watching and speaking with the men who were raping the victim and holding her down.

At that point, Pena demanded that the other men leave the apartment.  When they had done so, Pena insisted that the victim accompany him to the couch where he sexually assaulted her.  Soon thereafter, someone knocked on the door.  After refusing the victim's entreaties to answer it, Pena relented and permitted the victim to open the door where she was met by one of the men who had raped her.  The man entered and raped her again while Pena pulled her hair and told her not to resist.

Pena then agreed to take the victim home.  The two proceeded out of the building, Pena ordered two men to vacate a vehicle, and Pena drove the victim home.  Before leaving the victim, Pena asked for and the victim gave him her telephone number.  The victim reported the attack to her roommate and proceeded to the Fordham University security unit, which called emergency officials to take the victim to Our Lady of Mercy Hospital.  Physicians there, one of whom testified at the trial, examined the victim and reported bruising and other internal injuries that were consistent with trauma.  The victim then proceeded to a New York Police Department precinct where she reported the attack to Detective Michael Marchman, who also testified at trial.

In the days following the incident, Pena called the victim numerous times and left several messages for her on her answering machine and with her roommate.  Working with Detective Marchman, the victim set up a meeting with Pena who was arrested when he arrived at the designated place.

On cross-examination, defense counsel sought to attack the victim's credibility on several grounds:  that she had been celebrating her graduation while drinking heavily on the night of the alleged attacks; that she agreed to accompany four strangers at 3:30 a.m.; that she accepted a ride home from Pena and gave him her phone number; and that she did not report the incident to her sister or her brother-in-law.

To rebut the inference that the victim had acted inconsistently with having been raped, the prosecution, over defense counsel's objection, called an expert on Rape Trauma Syndrome.  The expert did not examine the victim or testify regarding actions she had taken.  Rather, the expert testified regarding whether certain actions were consistent with symptoms of Rape Trauma Syndrome.  The defense did not present a case.

The jury was charged on March 13, 1996.  Shortly after deliberations had begun, the jury returned a note as follows:  "Judge Stackhouse, four of the jurors feel that a verdict cannot be concluded because of the personal opinion of one juror."  (Tr. at 1096.)  The trial court asked whether counsel wanted the court to give any instruction to the jury.  (*Id.* at 1095).  Defense counsel objected to any instruction.  (*Id.*)  The trial court nevertheless stated that the court "ha[d] to say something" because "[o]bviously there's some interaction going on there they should try to clean up."  (*Id.*)  Accordingly, the trial court declared its intention to "tell them to put their emotions, personal baggage on the

side, try to reason with one another, that sort of thing.  Not an Allen charge, just to calm

down charge." (*Id.*)  The trial court then instructed the jury as follows:

> Let me just tell you that I think everybody should calm down.  This is something
> that takes time and patience and we realize you have to listen to one another.  You
> have to put your personal beliefs and your emotions and your sympathies and
> prejudices on the side.  Get rid of that personal baggage.  That doesn't have any
> place here.  You are supposed to reason together.  Use your logic, analyze the
> evidence conscientiously.  Be analytical, be judges, not get into personalities,
> stuff like that.

(*Id.* at 1096-97.)  After giving that instruction, the trial court discharged the jury for the

evening. (*Id.* at 1097.)

The jury resumed its deliberations the following day.  Pena was not present and

the trial court issued a warrant for his arrest. (*Id.* at 1098-99.)  The jury requested to hear

read back the testimony of the physician who examined the victim after the attack as well

as a tape recording of Pena's message to the victim and her roommate's answering

machine. (*Id.* at 1105.)  Later that day, the jury acquitted Pena of all the individual

liability counts but found him guilty of all the accomplice liability counts. (*Id.* at 1107-

9.)

On July 15, 1996, the trial court sentenced Pena *in absentia* to an indeterminate

term of imprisonment of twelve-and-one-half to twenty-five years on each rape count,

two counts to run consecutively and the other two concurrently, as well as three-and-one-

half to seven years on the sexual abuse count to run concurrently.  Pena's sentence was

not executed until April 1, 2004.

In December 2006, Pena, represented by counsel, appealed his conviction and

sentence on the grounds that (1) the evidence at trial did not establish Bronx County as

the proper venue for Pena's trial; (2) that there was insufficient evidence to support

Pena's conviction; and (3) that his sentence was excessive. (*See See* Aff. of J.

Marinaccio, Aug. 11, 2010 ("Marinaccio Aff."), Ex. 1.)  On June 19, 2007, the Appellate

Division affirmed Pena's conviction. *See People v. Pena*, 38 N.Y.S.2d 533 (1st Dep't

2007).  The Court of Appeals of New York denied leave to appeal without opinion on

August 31, 2007.  *See People v. Pena*, 874 N.E.2d 759 (N.Y. 2007).  The Court of

Appeals declined to reconsider its decision.  *See People v. Pena*, 878 N.E.2d 1026 (N.Y.

2007).

On July 9, 2008, Pena filed a petition for a writ of error *coram nobis* alleging

ineffective assistance of appellate counsel.  (Marinaccio Aff. Ex. 3.)  New York Supreme

Court denied that petition on January 26, 2009 and the Appellate Division affirmed that

decision on July 29, 2009.

On September 9, 2009, Pena filed a second *coram nobis* petition again alleging

ineffectiveness of appellate counsel.  Specifically, Pena argued that his counsel was

ineffective for failing to raise claims that (a) he was denied a speedy trial as required by

New York law; (b) that the trial court erroneously permitted testimony by the

prosecution's expert; (c) that the prosecution unfairly presented intent as an element of

each of the crimes in the indictment; (d) that the trial court failed to instruct the jury to

separately consider the evidence against each defendant; (e) that the trial court

improperly employed hypothetical examples in its jury charges with respect to

accomplice liability; (f) that the trial court did not instruct the jury that the indictment

was not evidence; and (g) that the trial court gave an improper so-called *Allen* charge

during deliberations.  (*See* Marinaccio Aff. Ex. 5.)  The Appellate Division denied that

petition on May 13, 2010 and the Court of Appeals of New York denied leave to appeal

on July 28, 2010.  (*See id.* Exs. 7-8.)

Pena filed this petition for writ of habeas corpus on October 19, 2009.  On December 6, 2010, Pena moved [17] for production of a full transcript of the pre-trial proceedings in his state court trial.  That motion remains pending.

On December 30, 2010, Magistrate Judge Ellis issued the Report advising that the petition should be dismissed.  Pena timely submitted objections to the Report on February 14, 2011.

## LEGAL STANDARD

A district court judge may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion.  See 28 U.S.C. § 636(b)(1).  Within ten days of service of the recommendation, any party may file written objections to the magistrate's report.  *Id.* Upon review of those portions of the record to which objections were made, the district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Where timely objections are made, the court is required to "make a *de novo* determination of those portions of a report . . . to which objection is made."  *Id.*; *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  But "when a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002).

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## DISCUSSION

Pena raises two grounds for relief in his petition:  (1) that the evidence was

insufficient to sustain his convictions; and (2) that his appellate counsel was ineffective.

With respect to his claim of ineffective assistance of appellate counsel, Pena essentially

raises the same arguments he made in his second *coram nobis* petition:  that counsel

failed to argue on appeal (a) that he was denied a speedy trial as required by New York

law; (b) that the trial court erroneously permitted testimony by the prosecution's expert;

(c) that the prosecution unfairly presented intent as an element of each of the crimes in

the indictment; (d) that the trial court failed to instruct the jury to separately consider the

evidence against each defendant; (e) that the trial court improperly employed

hypothetical examples in its jury charges with respect to accomplice liability; (f) that the

trial court did not instruct the jury that the indictment was not evidence; and (g) that the

trial court gave an improper so-called *Allen* charge during deliberations.

Pena objects only to the Report's conclusions that (i) his challenge to the

sufficiency of the evidence was procedurally barred; and (ii) that his appellate counsel

was not ineffective for failing to advance a speedy trial claim, challenge the use of expert

testimony, attack the prosecution's injection of intent into the case, and appeal the so-

called *Allen* charge.  The Court will consider these objections below.  Having carefully considered the Report's recommendations as to Pena's other claims in his petition, the Court finds no error and adopts the Report's recommendation to dismiss the petition as to those claims.

### A.  Sufficiency of the Evidence

Pena objects to the Report's conclusion that his challenge to the sufficiency of the evidence was procedurally barred.

"Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  "This rule applies regardless of whether the independent state law ground is substantive or procedural and whether the case is in federal court on direct review or from state court via a habeas corpus petition."  *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007).  "A state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is firmly established and regularly followed in the state, and application of the rule would not be exorbitant."  *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) (quotation marks omitted).

In making that determination, courts look to three "guideposts":

(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quotation marks omitted); *see also*

*Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) ("In determining whether New

York's preservation rule constitutes an adequate state ground, [courts] look to the state's

statutes and case law interpreting the rule.").   "[I]f the finding of default constitutes an

'independent and adequate state ground' for the state court's decision," the petitioner

must "'demonstrate cause for the default and actual prejudice'" or "'that failure to

consider the claims will result in a fundamental miscarriage of justice.'"  *Brown v.*

*Greiner*, 409 F.3d 523, 532 (2d Cir. 2005) (quoting *Coleman,* 501 U.S. at 729-32).

      Here, the Appellate Division found that Pena's claim was not properly preserved

at trial.  *See Pena*, 38 N.Y.S.2d 533.  As petitioner concedes (Pet'r's Objections at 4),

failure to object as required by New York's contemporaneous objection rule is an

independent and adequate state ground.  *See Garcia v. Lewis*, 188 F.3d 71 (2d Cir. 1999).

*See also Lopez v. Lape*, No. 10 Civ. 397, 2010 WL 3219308, at *6 (S.D.N.Y. Aug. 13,

2010) ("The contemporaneous objection rule is a settled and legitimate requirement of

New York law that provides an independent and adequate ground. . . ."); *King v. Greiner*,

No. 02 Civ. 5810, 2009 WL 2001439, at *8 (S.D.N.Y. July 8, 2009) (same).

      Pena nevertheless advances two reasons why the Report erred in finding his claim

procedurally barred.  First, Pena claims that his trial counsel did challenge the sufficiency

of the evidence in sentencing proceedings on July 15, 1996.  (*See* Pet'r's Objections at 5-

6.)  However, even taking that claim as true, such a challenge was insufficient to preserve

the issue for direct appeal in the New York appellate courts.  "In order to preserve claims

that a jury verdict is inconsistent or repugnant, such claims must be made before the jury

is discharged, at a time when the court can resubmit the matter to the jury to obtain a

consistent verdict." *People v. Murphy*, 887 N.Y.S.2d 359, 362 (3d Dep't 2009).  There is no evidence that Pena's counsel did so.

Second, Pena claims (presumably in the alternative) that, as his appellate counsel pointed out, "trial [defense] counsel was ineffective in his failure to preserve the claim of legal insufficiency of the evidence."  (*See id.* at 6. n.1.)  That claim, however, cannot succeed because the jury plainly had sufficient evidence to convict Pena.  The testimony of a rape victim alone can be sufficient to sustain a conviction.  *See, e.g.*, *Samuel v. Miller*, No. 99-CV-2485, 2003 WL 21508328, at *3 (E.D.N.Y. June 16, 2003) (rejecting challenge on habeas review to sufficiency of evidence for rape conviction where "the victim testified that petitioner threatened to force himself sexually upon her sister if she did not comply with his demands for sex").  Here, the Appellate Division had "no basis for disturbing the jury's determinations concerning the victim's credibility."  *Pena*, 38 N.Y.S.2d 533.   Accordingly, the Appellate Division found "extensive evidence of defendant's accessorial liability, including evidence supporting the conclusions that he directed the acts of the other participants, and that, in furtherance of the sex crimes, he personally forced the victim to use cocaine."  *Id.*

Pena does not—and could not—point to any reason why the Appellate Division's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  On the contrary, the Appellate Division correctly decided that the evidence adduced at trial was clearly sufficient.  Since Pena's counsel could not have been ineffective for failing to raise a losing ground for appeal, Pena cannot excuse his failure to preserve the issue for appeal and his claim is procedurally barred.  In any event, for the same reason, Pena's

claim lacks merit.  Either way, Pena's petition must be dismissed to the extent it is based on a claim that the evidence was insufficient to sustain his convictions.

### B.  Ineffective Assistance of Appellate Counsel

#### a.  Legal Principles

"Under *Strickland v. Washington,* 466 U.S. 668 (1984), to prevail on an ineffective assistance of counsel claim," Pena "'must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness . . . and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation.'" *Brown v. Greene,* 577 F.3d 107, 110 (2d Cir. 2009) (quoting *Carrion v. Smith,* 549 F.3d 583, 588 (2d Cir. 2008)).  "*Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right."  *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985)).

"It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor,* 529 U.S. 362, 391 (2000) (quoting 28 U.S.C. § 2254(d)(1)).  And "for AEDPA purposes, it matters only that the *Strickland* performance and prejudice test has been 'clearly established'—not that a particular theory of ineffective assistance derived from *Strickland* has been clearly established."  *Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).  Accordingly, the question is whether the state court's decision was "contrary to" or "an unreasonable application of" *Strickland*, not whether it was "contrary to" or "an unreasonable application of" *Strickland* as it has elsewhere been applied to the failure to raise a given ground for appeal.

13

On that question, "[t]o satisfy the first part of the test—performance—[Pena] must 'show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Bierenbaum*, 607 F.3d at 50 (quoting *Strickland*, 466 U.S. at 687). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy." *Id.* (quotation marks omitted).

"To satisfy the second part of the *Strickland* test—prejudice—[Pena] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bierenbaum*, 607 F.3d at 51 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

On federal habeas review, there is another aspect to the ineffective assistance of counsel analysis under *Strickland.* "Under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Rather, the petitioner must show "that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*

Finally, a claim of ineffective assistance of appellate counsel presents additional issues. "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to

14

show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994). Indeed, the Constitution does not require "counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F.3d at 533. "Appellate counsel's performance must be assessed 'on the basis of the facts of the particular case "viewed as of the time of counsel's conduct" without the benefit of hindsight.'" *Sellan*, 261 F.3d at 315 (quoting *Mayo,* 13 F.3d at 533) (quoting *Strickland*, 466 U.S. at 690). "An attorney is not required to 'forecast changes or advances in the law.'" *Sellan*, 261 F.3d at 315 (quoting *Jameson v. Coughlin,* 22 F.3d 427, 429 (2d Cir. 1994)).

### b.  Speedy Trial Claim

Under Section 30.30, of the New York Criminal Procedure Law, a motion to dismiss the indictment "must be granted where the people are not ready for trial within . . . . six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony. . . ." N.Y.C.P.L. § 30.30(1)(a). Section 30.30 also provides for a number of reasons why delays or adjournments are not chargeable to the prosecution for purposes of computing the six month time limit. Particularly relevant here, Section 30.30 provides that a speedy trial motion "may be denied where the people are not ready for trial if the people were ready for trial prior to the expiration of the specified period and their present unreadiness is due to some

exceptional fact or circumstance, including, but not limited to . . . when the district

attorney has exercised due diligence to obtain such evidence and there are reasonable

grounds to believe that such evidence will become available in a reasonable period."  *Id.*

§ 30.30(3)(b).

      The Report noted that "the trial court found that there were 62 days chargeable to

the government and 87 days in dispute, such that even if all disputed time was charged to

the prosecution, the trial would still be within the six month time limit."  (Report at 13.)

The report further noted that "[m]uch of the time excluded by the trial court was delay

while DNA testing was being conducted" and that New York law did not place any limit

on the length of time excluded for that reason.  (*Id.*)  Accordingly, the Report found it

"unlikely that [Pena's] argument [on speedy trial grounds] would have been successful on

appeal, and Pena's appellate counsel was not ineffective for failing to raise it." (*Id.* at 14.)

      Pena makes two objections to that conclusion.  First, Pena points to a stipulation

read into the trial record that "a rape kit" of the victim "was received by LifeCodes

Corporation from the vouchering Police Officer . . . of the New York City Police

Department on November 17, 1994 which had been collected on May 2, 1993," the date

of the attack.  Pena argues that this stipulation shows that "DNA results were actually

*completed* on or about November 17, 1994" and accordingly that "the periods from

November 17, 1994 until February 26, 1996 (the day trial commenced)," that is, fifteen

months or 455 days, "are disputable."  (Pet'r's Objections at 11.)  However, Pena ignores

the rest of the stipulation:  "that *thereafter* . . . a Senior Forensic Scientist of the

LifeCodes Corporation performed RFLP DNA genetic testing on the aforementioned

samples and compared them with blood samples drawn from the defendant Juan Pena on

16

February 3, 1994."  Hence it is simply not the case that the prosecution had completed DNA testing on November 17, 1994.

Second, Pena contends that a proper determination of the number of days chargeable to the prosecution cannot be determined without examining the minutes of certain court hearings.  Pena has made a separate motion for production of these minutes.[1]  Pena further argues that appellate counsel was ineffective for failing to argue that the state court should have held a hearing regarding his speedy trial claim before concluding that the adjournments on the aforementioned dates were not chargeable to the government.  (Pet'r Objections at 12.)

"Where a defendant moves to dismiss an indictment on the grounds specified in CPL 30.30 and includes in the moving papers sworn allegations that there has been unexcused delay in excess of the statutory maximum, the motion must be granted summarily unless the People controvert the factual basis for the motion."  *People v. Santos*, 501 N.E.2d 19, 21 (N.Y. 1986) (citing N.Y.C.P.L. 210.45[4]).  "Thus, once a defendant has shown the existence of an unexcused delay greater than . . . six months, the burden of showing that time should be excluded falls upon the People."  *Santos*, 501 N.E.2d at 21; *see also People v. Berkowitz*, 406 N.E.2d 783, 792 (N.Y. 1980).  "Where the papers submitted by the prosecutor show that there is a factual dispute, there must be a hearing."  *Santos*, 501 N.E.2d at 21; *see also People v. Contrearas*, 643 N.Y.S.2d 794, 795 (4th Dep't 1996); *People v. Mackenzie*, 647 N.Y.S.2d 825, 826 (2d Dep't 1996) ("Here, the People's opposition to the defendant's motion failed to provide such

---

[1] Pena does not appear to specify which minutes are missing, but the Court infers that Pena is referring to the minutes from February 1, March 1, April 5, May 3, May 17, June 14, August 16, and September 13, 1994 to which his trial counsel referred in reply papers submitted in connection with the speedy trial motion.

conclusive proof.  Accordingly, the court erred in denying the motion without a full hearing."); *People v. Reinhardt*, 599 N.Y.S.2d 208, 209 (4th Dep't 1993) (remanding for a hearing where "[t]he People did not submit documentary proof to support the assertion that readiness was announced . . . or to support the contentions that certain time periods were excludable"); *People v. Wilson*, 591 N.Y.S.2d 513, 514 (2d Dep't 1992) ("In this case, the People's papers were not sufficient to justify denying the motion without a hearing as they did not provide the court with evidence in support of the factual basis for each exclusion claimed, or substantiate their assertion that they declared their readiness on a certain date."); *People v. Hudson*, 556 N.Y.S.2d 942, 944 (2d Dep't 1990) ("Therefore, since the defendant alleged the existence of a delay greater than six months and the People did not provide conclusive proof of sufficient excludable periods, the court erred in denying the motion to dismiss without a full hearing.").

"[H]owever, a slightly different analysis must be applied" where "the factual allegations in defendant's moving papers did not on their face indicate a clear entitlement to a dismissal of the charges under CPL 30.30."  *People v. Lomax*, 406 N.E.2d 793, 795 (N.Y. 1980).  In *Lomax*, the "defendant's papers contained averments which indicated that there were several periods of time following his first arraignment during which the criminal action against him was delayed due to pretrial motions that had been made by the defense."  *Id.*  Since "such periods would generally be excluded from the total time within which the People are required by statute to become ready to proceed to trial" but "defendant's papers did not specify the dates upon which the earlier motions had been made . . . the Trial Judge was therefore left without a means to compute the relevant excludable periods."  *Id.* at 795-96.  "In other words, having himself shown that some

portion of the delay in the People's readiness for trial was 'excusable' under the terms of the statute, defendant then neglected to demonstrate that there remained a sufficient 'unexcused' period of delay to warrant a dismissal of the charges under CPL 30.30." *Id.* at 796.  In that case, the Court of Appeals of New York held that it "cannot say that the trial court's decision to deny defendant's statutory speedy trial motion without a full evidentiary hearing was improper." *Id.*; *see also People v. Donaldson*, 549 N.Y.S.2d 281, 282 (4th Dep't 1989) (finding no error in rejecting speedy trial motion without a hearing where "Defendant's motion papers failed to assert a legal basis for dismissal of the indictment on the grounds of either prereadiness or postreadiness delay").

Here, Pena's trial counsel argued that 134 days were chargeable to the prosecution for various reasons and that another 197 days were chargeable because, "[p]rior to the consent adjournment on August 16, 1994 and the filing of a Notice of Readiness on August 17, 1994, the People were not ready for trial due to their request for adjournments so that they could run DNA tests on defendant's blood sample."  However, "a period of time necessary to obtain the results of DNA testing in a rape case is excludable under the speedy trial statute as a 'delay occasioned by exceptional circumstances' pursuant to CPL 30.30(4)(g)." *People v. Robinson*, 850 N.Y.S.2d 533, 534 (2d Dep't 2008); *see also People v. Williams*, 665 N.Y.S.2d 87, 88 (2d Dep't 1997) ("The trial court correctly concluded that the delays occasioned by the necessity of obtaining blood and saliva samples from the defendant and his two codefendants,

performing the genetic tests, and obtaining the written results of those analyses were exceptional circumstances within the meaning of CPL 30.30(4)(g)(i).").[2]

Thus Pena had "himself shown that some portion of the delay in the People's readiness for trial was 'excusable' under the terms of the statute." *Lomax*, 406 N.E.2d at 796. And because Pena did not explain why any other time other than those periods that the Report assumed would be chargeable to the prosecution, Pena "neglected to demonstrate that there remained a sufficient 'unexcused' period of delay to warrant a dismissal of the charges under CPL 30.30." *Id.* at 796. Accordingly, the New York appellate courts would not have found it "improper" to deny Pena's motion without a hearing and Pena's appellate counsel could not have been ineffective for failing to raise an argument that would not have succeeded. To the extent his petition rests on that ground, it must therefore be dismissed. Moreover, because even taking Pena's allegations at trial as true the transcripts of the trial court proceedings would have shown only an excusable delay, it is unnecessary to require production of those transcripts at this time. Accordingly, Pena's motion to produce those transcripts is denied.[3]

---

[2] Pena argues that courts have imposed limits on the amount of time that may be excluded for conducting DNA testing. None of the cases he has cited stands for that proposition.

[3] It is true that the prosecution's own response to the motion stated that "the results of the DNA testing were turned over to the court and defense counsel on May 3, 1994" and that "[t]he remainder of the time after May 3, 1994 was [due to] defense counsel['s] requested adjournments for setting a trial date." Accordingly, the prosecution's own factual recitation does not explain the period between May 1, 1994 and August 17, 1994, the date of the Notice of Readiness, on the basis of DNA testing. However, Pena did not identify any reason why this time period was unexcused and did not dispute that it had requested adjournments on those dates either in his counsel's sworn affidavit explaining why the prosecution had engaged in unexcused delay or in his response to the prosecution's sworn affidavit. In very similar circumstances in *Lomax*, the Court of Appeals of New York held it was not "improper" to deny the motion without a hearing. The same is true here.

### c.  Expert Testimony

The Court of Appeals of New York has held that "the relevant scientific community has generally accepted that rape is a highly traumatic event that will in many women trigger the onset of certain identifiable symptoms." *People v. Taylor*, 552 N.E.2d 131, 134 (N.Y. 1990).  That court has also held that "introduction of expert testimony describing rape trauma syndrome may under certain circumstances assist a lay jury in deciding issues in a rape trial." *Id.* at 136.  Accordingly, under New York law, expert testimony regarding Rape Trauma Syndrome is admissible where it "provides a possible explanation for the complainant's behavior that is consistent with her claim that she was raped" or to "dispel[s] misconceptions that jurors might possess regarding the ordinary responses of rape victims in the first hours after the attack." *Id.* at 138.  On the other hand, "evidence of rape trauma syndrome is inadmissible when it inescapably bears solely on proving that a rape occurred. . . ." *Id.*

Pena argues that the trial court here erroneously admitted testimony that fell into the latter category by permitting the prosecution's expert to answer hypothetical questions about whether several aspects of the victim's behavior following the alleged attack were consistent with Rape Trauma Syndrome.  That behavior included accepting a ride from Pena; giving her phone number to Pena; not asking others for help when she and Pena left the building; reporting the attack to a friend and not family members; seeking assistance from a medical clinic rather than the police; exhibiting detachment and reluctance in speaking about the incident; and blaming herself for an attack.

Questions about this behavior were relevant to explaining to the jury that the behavior were symptoms of Rape Trauma Syndrome and therefore consistent with the

victim's allegations rather than, as Pena attempted to show in cross-examining the victim, evidence that no rape occurred.  Accordingly, "the defense counsel opened the door to this challenged testimony," *People v. Brown*, 777 N.Y.S.2d 508, 510 (2d Dep't 2004) (rejecting challenge to expert testimony regarding Rape Trauma Syndrome), which was squarely within the area of permissible testimony delineated in *Taylor*.   Moreover, the trial court "properly limited the scope of the testimony and [the expert] spoke about victims in general and never opined that the defendant committed the crimes, that the victim was sexually abused, or that the victim's specific actions and behavior were consistent with abuse."  *People v. Rich*, 912 N.Y.S.2d 124, 127 (2d Dep't 2010).  Rather, the expert testified as to whether the behavior was "explainable under the rape trauma syndrome."  Finally, Pena's trial counsel specifically waived any objection to the expert's qualifications to testify as an expert.  (*See* Tr. at 722-723.)[4]

On those facts, an argument that the trial court erred in permitting the expert testimony at issue lacks merit.  Accordingly, there is no merit to Pena's contention that he was prejudiced by appellate counsel's failure to make that argument on direct appeal. To the extent that Pena's petition rests on that meritless ground, the petition is dismissed.

### d.  Intent

Pena argues that his appellate counsel was ineffective for failing to argue that the trial court unfairly instructed the jury and/or permitted the prosecutor to make arguments with respect to intent.  It is unclear exactly what Pena's argument is.  If Pena is arguing that appellate counsel should have argued that the trial court erred by giving any

[4] For that reason, Pena' suggestion that the trial court erred in not holding a hearing regarding the expert's testimony is misplaced.  Moreover, the trial court gave Pena's trial counsel ample opportunity outside the presence of the jury to challenge the admission of the expert's testimony.  (*See* Tr. at 586-600, 696-715.)

instruction as to intent, that argument plainly lacks merit.  *See People v. Williams*, 614 N.E.2d 730, 736 (N.Y. 1993) ("Though the statute[] [criminalizing first-degree rape] [is] silent on the subject, intent is implicitly an element of th[is] crime[].  The intent required is the intent to perform the prohibited act—i.e., the intent to forcibly compel another to engage in intercourse or sodomy.).

The crux of Pena's submission appears to be the suggestion that the instructions regarding intent must have confused the jury into convicting Pena for something other than his actions in concert with the other men.  One aspect of that argument appears to be that the trial court erred by instructing the jury that Pena could be found guilty for the acts of others not only as an accomplice but as a principal.  That contention lacks merit. "Whether a defendant is charged as a principal or as an accomplice to a crime has no bearing on the theory of the prosecution."  *People v. Rivera*, 646 N.E.2d 1098, 1099 (N.Y. 1995).  Hence, "as a general rule, a defendant may not legitimately claim to have been prejudiced when his guilt as a principal is proved, even though he was charged as an accessory, or where his guilt as an accomplice is proved, even though he was charged as a principal."  *People v. Woods*, 618 N.Y.S.2d 51, 53 (2d Dep't 1994); *see also People v. Perez*, 599 N.Y.S.2d 269, 270 (1st Dep't 1993) (rejecting argument "the court improperly instructed the jury to consider his guilt as a principal when the indictment specifically charged him as an accessory . . . since the evidence of defendant's participation in the sale proved his culpability as a principal and also as an accomplice").

The core of Pena's argument is that "there [wa]s no evidence that [he] solicited, commanded, importuned, directed, or otherwise spoke to the other four persons involved in the alleged sexual assault."  (Pet's Obj. at 17.)  Hardly.  The victim testified that the

other men met Pena at the apartment where the sexual acts took place; that Pena ordered

others to leave the apartment and that the men complied; that Pena forced the victim to

take cocaine after she declined the other men's invitation to do so; that Pena was

conversing with the other men while they held the victim down and raped her; that Pena

acceded to another man's request to reenter the apartment to rape the victim again; and

that Pena physically restrained the victim while the man did so.  This testimony

suggested that Pena took active steps to render the victim intoxicated and was in control

of the other men.  As such, the testimony was more than sufficient for the jury to

conclude beyond a reasonable doubt that Pena "solcit[ed], request[ed], command[ed],

importune[ed], or intentionally aid[ed]" the other men's acts.  N.Y. Penal Law § 20.00.

The fact that Pena was not present when the victim initially agreed to accompany the

other men hardly affects that conclusion, particularly where the men met Pena at an

apartment he appeared to control.[5]

Since the claim that Pena claims appellate counsel should have raised lacks merit,

counsel was hardly ineffective for failing to raise it.  Pena's petition is therefore denied to

---

[5] Pena also argues that the instructions must have confused the jury because he was
acquitted of the charges against him as a principal.  To be sure, that verdict is somewhat
puzzling.  One possibility is that the jury found that the fact that the victim accepted a
ride home from Pena and gave him her phone number rendered her testimony that her
sexual intercourse with Pena was not consensual less credible than her testimony
regarding the other men.  On the other hand, that explanation is hard to square with the
fact that the victim also testified that Pena forced her to take cocaine and physically
restrained her while she was raped by another man—hardly facts which suggest that the
victim's subsequent intercourse with Pena was consensual.  What is more, it would be
hard to understand why the jury would have discredited the victim's testimony as to her
intercourse with Pena but credited that testimony regarding Pena's other actions.  In any
event, however, that the jury's acquittal of Pena on the three counts charging him as a
principal may be hard to explain does not mean that the same is true of Pena's conviction
for the rapes and assaults committed by others.  Whatever the jury may have thought
about Pena's liability as a principal for his own alleged attacks, there was sufficient
evidence to support his conviction as an accomplice to attacks by others.

the extent it is based on a claim that his appellate counsel was ineffective for failing to challenge the trial court's instructions with respect to intent.

### e.  *Allen* **Charge**

The Report recommended denying Pena's petition to the extent it is based on the argument that Pena was denied effective appellate counsel because counsel failed to appeal what Pena describes as an improper so-called *Allen* charge.  The term "*Allen* charge" is a generic term used for a type of supplemental instruction that is given to a deadlocked jury, first approved by the Supreme Court in *Allen v. United States,* 164 U.S. 492 (1896).  "A traditional *Allen* charge reminds the jurors about the importance of obtaining a verdict and encourages jurors to listen 'to each other's arguments' while also emphasizing that 'the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows.'"  *Smalls v. Batista*, 191 F.3d 272, 275 n.1 (2d Cir. 1999) (quoting *Allen*, 164 U.S. at 501).  "A key aspect of the original *Allen* charge is the suggestion that jurors in the minority should reconsider their position."  *Spears v. Greiner*, 459 F.3d 200, 204 n.4 (2d Cir. 2006).  In contrast, a supplemental charge "is properly characterized as a modified *Allen* charge" if it "[does] not ask the jurors holding the minority position to reconsider their views."  *United States v. Sanders*, 232 Fed.Appx. 42, 43 (2d Cir. 2007).  *Cf. Lowenfield v. Phelps*, 484 U.S. 231, 238 (1988) (contrasting a charge that "does not speak specifically to the minority jurors" with a "traditional *Allen* charge").

"Whether an *Allen* charge was appropriate in a given case hinges on whether it tends to coerce undecided jurors into reaching a verdict.  Coercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror

25

conscientiously holds as to a defendant's guilt." *United States v. Melendez*, 60 F.3d 41,

51 (2d Cir. 1995), *vacated on other grounds by Colon v. United States*, 516 U.S. 1105

(1996).  The same standard applies to a modified *Allen* charge.  *See Lowenfield*, 484 U.S.

237-38.

The Report concluded that the language of the charge given by the state court did

"not meet this level of coercion" because the charge provided "no emphasis to the jury of

any 'need' or 'duty' to reach a verdict that might cause them to abandon their individual

opinions, and the jurors were encouraged to continue to 'analyze the evidence

conscientiously.'"  (Report at 17.)  Accordingly, the Report concluded that the charge

"was not improper" and "Pena's appellate counsel was [therefore] not ineffective in

failing to raise it on appeal."  (*Id.*)

Pena objects that this recommendation "overlooks words such as *you have* to and

*get rid of that personal baggage*" and ignores that "the jurors were not unambiguously

told that they were—by no means—to abandon their conscious belief in the innocence of

petitioner, even if their fellow juror(s) felt or believed differently."  (Pet'r's Objections at

18 (emphasis in original).)   Pena relies on *Smalls v. Batista*, 101 F.3d 272 (2d Cir. 1999),

in which the Second Circuit affirmed a grant of the writ on the basis of an improper *Allen*

charge.

The state court in *Smalls* received a note from the jury indicating that "[t]he

decision is 11 to 1, and we are unable to come to a conclusion."  *Id.* at 275.  Over the

objection of defense counsel, the state court instructed the jury as follows:

> Now, you have had the case for some four to five hours, taking off your time for
> supper.

I will ask you to go back and again discuss this amongst yourselves. You should not be afraid to express your opinions and views. If you believe your opinions and views are correct, then you should make every effort to convince the others whether it be one of eleven, two out of twelve, whatever number it may be, to express your views.

If you believe your views are correct, then it is your responsibility as a juror to convince the others as to the correctness of the position of views that you have. You should continue to discuss the case.

If, after discussing your views and opinions with your fellow jurors, if you then feel that your views are no longer correct, you should be willing to change them, but if you believe your views are correct, then it is your responsibility as a juror to attempt to convince the others of the correctness of your views.

What I am asking you to do is to continue a free discussion. Discuss the issues, discuss the facts, and as you determine the facts to be, you should always be open to reason, you should not go to the juryroom and lock yourselves in the room and refuse to discuss the case.

Listen to the views of your fellow jurors, and express your personal views as well. I am not concerned what your views are. If you believe they are correct, it is your responsibility to convince the others, have them switch, have them adopt your views, but discuss it.

Please, return to the juryroom.

*Id.* The jury resumed its deliberations and continued them the next day, when it heard testimony read back for the second time, and convicted the defendant. *See id.* The New York State courts rejected challenges to the charge. *See id.* at 276.

On federal habeas review, the Second Circuit affirmed the district court's decision that the state court proceedings "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Second Circuit read Supreme Court precedent for the proposition that "a necessary component of any *Allen*-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs." *Smalls*, 191 F.3d at 279. The court contrasted the charge in the case before it with the charge the

Supreme Court upheld in *Lowenfield v. Phelps*, 484 U.S. 231 (1988), which reminded each juror not to "surrender [his or her] honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." *Id.* at 235.  Rejecting the argument that "the instructions given did not resemble a traditional *Allen* charge because the trial judge never urged the jury to reach a verdict, but rather ordered them only to continue to deliberate and discuss," the Second Circuit held that the absence of cautionary language was a "fatal flaw in the jury charge in this case. . . ."  *Smalls*, 191 F.3d at 279.

It is true that, far from reminding each the jurors not to "surrender your honest belief," *Phelps*, 484 U.S. at 235, the trial court in this case instructed that "[y]ou have to put your personal beliefs and your emotions and your sympathies and prejudices on the side."  And while the state court here also instructed the jury to "reason together . . . . "[u]se your logic" and "analyze the evidence conscientiously," the Second Circuit in *Smalls* held that the omission of the required admonition rendered erroneous even an instruction "only to continue to deliberate, argue and discuss."  *Smalls*, 191 F.3d at 279.

The trial court's instruction to "calm down" and its references to "personal baggage," "emotions," "sympathies," and "prejudices" suggest that the trial court interpreted the phrase "personal opinion" as an indication that one juror was relying on improper considerations such as an opinion about what the law should be or an opinion about a fellow juror.  (*See also* Tr. at 1095 ("Obviously, there's some interact going on there they should try to clean up.").)  Yet that is far from the only or plain meaning of "personal opinion."  And, in any event, "it is from the position of a minority juror that a suspect *Allen* charge is analyzed."  *Smalls*, 191 F.3d at 280.  That is, the relevant inquiry

is not what the court was thinking in giving the charge but what a juror would have thought in hearing it.   Indeed, the purpose of the cautionary language the Second Circuit found wanting in *Smalls* is to ensure that jurors do not hear exhortations to put "personal beliefs" aside and "reason together" as pressure to "surrender their own conscientiously held beliefs."  *Id.* at 279.   The trial court may have intended to instruct the jury to put aside "personal beliefs" other than those based on the evidence, common sense, and the court's instructions.  But in response to a note regarding one juror's "personal opinion," cautionary language could have left no doubt about the distinction between setting aside personal opinions of the defendants' character, the wisdom of the law, or other jurors and setting aside personal opinions of the evidence.

However, *Smalls* does not avail Pena for two reasons.  The first is that the Second Circuit has held that it "did not create any new rule in *Smalls* that would replace the Supreme Court's standard in *Lowenfield* that an *Allen* charge must be evaluated 'in its context and under all the circumstances.'"  *Spears*, 459 F.3d at 206 (quoting *Lowenfield*, 484 U.S. at 237).   As the Second Circuit noted in *Spears,* the court in *Smalls* took care "to emphasize that the charge in question was unconstitutionally coercive because it *both* (1) obligated jurors to convince one another that one view was superior to another, *and* (2) failed to remind those jurors not to relinquish their own conscientiously held beliefs."  *Smalls*, 191 F.3d at 278 (emphasis in original).[6]  And the Second Circuit has upheld *Allen*

---

[6] *Smalls* itself was somewhat ambiguous on that score.  *Compare id.* at 279 (describing "the lack of cautionary language which would discourage jurors from surrendering their own conscientiously held beliefs" as "the fatal flaw of the jury charge in this case"), *and id.* (describing such cautionary language as "a necessary component of any *Allen*-type charge"), *with id.* at 280 ("It is this lack of cautionary language, *especially* when coupled with the trial court's thrice repeated direction that the jurors convince each other, that renders the charge coercive and a violation of Smalls' constitutional rights to due process

charges that did not contain statements as coercive as those in *Smalls* even where the

charges do contain cautionary language.

      *Spears* is instructive in that regard.  In response to the jury's note that "[w]e have

a hung jury on both defendants and don't think anything will help change our decision,"

459 F.3d at 202, the trial court in *Spears* gave the following instruction:

> The answer to that one is that you have just barely begun your deliberations.  We
> spent a good deal of time in selecting the jury and hearing the testimony.  Please
> give it your full attention.  I have a very strong feeling that you should be able to
> reach a verdict.

*Id.*  "After an unrecorded side-bar conference, the trial judge continued:

> Members of the jury, there has been an objection by counsel to my statement that
> a lot of time and money has been expended on this case.  That shouldn't be part of
> your consideration.  What you should consider is what the facts are with the idea,
> with an attempt to reach a verdict if that be possible.  Based on the very few hours
> that you have deliberated, I tell you that it's far too premature at this point to send
> such a note.  Please continue your deliberations with a view toward arriving at a
> verdict if that's possible.

*Id.*  In upholding this charge, the *Spears* court noted that "the charge did not urge the

jurors to listen to the views of other jurors with whom they disagreed or attempt to

persuade each other" and that "the original charge, given to the jury earlier that day, did

include cautionary language telling jurors that they had a right to stick to their arguments

and stand up for their own strong opinions."  *Spears*, 459 F.3d at 206.  "Finally, the

actions of the jury after receiving the modified *Allen* charge [did] not support a finding of

coercion" where "[t]he jury continued deliberating for the rest of the day . . . and was

---

and a fair trial.") (emphasis added), *and id.* ("As given, the instant charge was improper
and coercive because it failed to include that cautionary language, *not just* because it
created a 'novel burden' by exhorting jurors to convince one another.") (emphasis
added).  However, the Court is bound by the Second Circuit's interpretation in *Spears* of
its prior decision in *Smalls*.

unable to reach a verdict with respect to Spears's co-defendant." *Id.* at 206-7. Accordingly, the Second Circuit affirmed the denial of the petition.

The circumstances of the state court's instruction here had more in common with the circumstances of *Spears* than of *Smalls.* The state court "did not urge the jurors to . . . attempt to persuade each other." *Spears*, 459 F.3d at 206; *see also Sanders*, 232 Fed.Appx. at 43-44 ("The instruction did not tell the jurors that they had a duty and responsibility to convince other jurors that their views were correct, the practice that in *Smalls* we found objectionable when not accompanied by cautionary language."). In fact, the state court did not even refer to a verdict, never mind the need to reach one. Moreover, in "the original charge, given to the jury earlier that day," the state court reminded the jury that "before you arrive at your ultimate verdict, each of you must be, without deference to anyone else, satisfied of the justness of your individual verdict." (Tr. at 1064.) The state court added that the jurors "must not sacrifice either your personal integrity nor the integrity of this trial, to achieve a consensus which is not in accord with your own conscience." (*Id.*)

Further, "the length of time between the court's instruction and the actual rendering of the jury verdict is probative of the fact that the jury was not coerced or unduly influenced by the judge's remarks." *United States v. Burke*, 700 F.2d 70, 80 (2d Cir. 1983). Here, the jury here deliberated after hearing the supplemental charge for as long as it had deliberated prior to sending the note that prompted the charge. *See Sanders*, 232 Fed.Appx. at 44 ("The lack of coercion is further evidenced by . . . the fact that the jury continued to deliberate for two hours following the instruction, nearly as long as they had deliberated before receiving the charge."). Finally, the jury acquitted

31

Pena on three counts.  That split verdict "'strongly indicates that individual attention was given to . . . each count,' and that the charge 'did not cause jurors to surrender their opinions merely to reach a result.'"  *Spears*, 459 F.3d at 207 (quoting *United States v. Fermin*, 32 F.3d 674, 680 (2d Cir. 1994), *overruled* on *other grounds*, *Bailey v. United States*, 516 U.S. 137 (1995)).  Accordingly, the claim that the Pena contends his counsel should have raised appears to have little merit.

The second reason that *Smalls* does not avail Pena is that the ground for relief in the petition before the Court is not a direct challenge to the charge.  Rather, the petition claims that Pena's appellate counsel was ineffective for failing to make that challenge before the Appellate Division.  Hence the question is not whether the trial court's decision to give the charge "was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), but whether that description applies to the New York appellate courts' decision that Pena's counsel was not ineffective for failing to argue the propriety of the charge on direct appeal.

It is not immediately obvious why that makes Pena's task more rather than less difficult.  To succeed on his ineffective assistance of counsel claim, Pena "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness . . . and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation."  *Carrion*, 549 F.3d at 588.  And with respect to the prejudice element, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  *Strickland*, 66 U.S. at 693.  Rather, "[t]o establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a

'reasonable probability' that [his] claim would have been successful before the state's highest court.'" *Mayo*, 13 F.3d at 534 (quoting *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir. 1992)).  Further, the Second Circuit has indicated that "[t]here is a reasonable probability that the Appellate Division and the Court of Appeals would have been swayed by" an unmade argument where the "claim was sound."  *Ramchair v. Conway*, 601 F.3d 66, 77 (2d Cir. 2010) (affirming grant of writ and order of new trial on ground that appellate counsel was ineffective).

However, the problem for Pena is that the New York Court of Appeals has held that "an *Allen* charge is not 'unbalanced or coercive for its failure to emphasize that the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of a juror's fellows.'"  *People v. Aponte*, 810 N.E.2d 899, 902 (N.Y. 2004) (quoting *People v. Ford,* 577 N.E.2d 1034, 1035 (1991) (quotation marks omitted)). Thus in *Ford*, the New York Court of Appeals held that the trial court's failure to provide this admonition did not deny the defendant due process where "[t]he supplemental instruction viewed as a whole was simply encouraging. . . ." *Id.*  Accordingly, the New York Court of Appeals seems to have squarely rejected the very argument that Pena contends his counsel should have made, namely, that the supplemental charge was coercive because it did not admonish the jury not to abandon conscientiously held views. In that case, appellate counsel's failure not to make the argument could hardly have prejudiced Pena.[7]  The Appellate Division's decision to deny Pena's petition on that

---

[7] It is true that appealing the modified *Allen* charge on direct appeal would have preserved the issue for federal habeas review.  In that posture, the question would have been whether the charge itself was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).  However, for the reasons set forth above, *Spears* strongly suggests

ground for a writ of error *coram norbis* was hardly an unreasonable application of *Strickland*.[8]  Accordingly, Pena's petition is dismissed to the extent it is based on a claim that his appellate counsel was ineffective for failing to challenge the trial court's modified *Allen* charge.[9]

---

that *Smalls* is not controlling authority and that the charge here was not "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

[8] That renders the deficiency inquiry unnecessary.  *See Strickland*, 466 U.S. 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

[9] This conclusion does not turn on AEDPA's deferential standard of review.  "Where, as in this case, 'there is no basis either in the history of the case or the opinion of the Appellate Division for believing' that the claim at issue 'was denied on procedural or any other nonsubstantive grounds,' a terse statement that 'remaining contentions are without merit' suffices to trigger AEDPA's heightened standard of review."   *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003) (quoting *Sellan,* 261 F.3d at 312).  Yet, even if the *de novo* standard of review applied, the decisions in *Spears* and *Ford* are reason enough to reject the petition with respect to the claim of ineffective assistance as to the modified *Allen* charge on the ground that any such claim would not have been successful.

## CONCLUSION

For the foregoing reasons, Pena's petition is DENIED in all respects.  Pena's

motion [17] to produce transcripts from state court proceedings is also DENIED.  The

Clerk of Court is directed to close this case.


SO ORDERED.

Dated: New York, New York
       August 2 4 2011

                                        Richard J. Holwell
                                        United States District Judge

35